IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ANDY BROWN, in his official capacity as Travis County Judge; BRUCE ELFANT, in his official capacity as Travis County Tax Assessor-Collector and Voter Registrar; JEFF TRAVILLION, in his official capacity as Travis County Commissioner; BRIGID SHEA, in her official capacity as Travis County Commissioner; ANN HOWARD, in her official capacity as Travis County Commissioner; MARGARET GÓMEZ, in her official capacity as Travis County Commissioner,<br><br>　　　*Plaintiffs,*<br><br>v.<br><br>KEN PAXTON, in his official capacity as Texas Attorney General; JANE NELSON, in her official capacity as Texas Secretary of State,<br><br>　　　*Defendants.* | Case No.: 1:24-cv-01095 |

**FIRST AMENDED COMPLAINT FOR EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**

Pursuant to 28 USC §§ 1331, 1343(a)(3), 1357, 1441, 1446, and 1651, 52 USC § 1983, and 52 U.S.C. § 20501 *et seq.*, Plaintiffs allege as follows:

**INTRODUCTION**

1.　Defendant Attorney General Ken Paxton does not want at least some eligible Texans to register to vote. To facilitate that goal, he is engaging in a campaign, using the power of his office to act on behalf of the State, to selectively sue, threaten, and harass county officials—including Plaintiffs—as well as nonprofit organizations across Texas, seeking to prevent them from

1

facilitating voter registration and participation. Likewise, he is engaging in a public campaign to dissuade eligible Texans into not registering to vote.

2. In pursuit of his personal animosity toward certain voters—especially those with whom he disagrees politically—Paxton is using his power to compel the State to sue Plaintiffs for simply mailing voter registration applications to likely eligible voters who are not yet registered, even though Plaintiffs have a duty under federal law to encourage voter registration in this manner. He is likewise engaged in an intimidation campaign, using threats and public statements designed to coerce local government officials, including Plaintiffs, to cease efforts that federal law requires to register voters and to discourage eligible voters from registering.

3. Federal law prohibits Paxton's vote suppression campaign. Congress enacted the National Voter Registration Act ("NVRA") because "the right of citizens of the United States to vote is a fundamental right" and Congress found it necessary to enact federal legislation "to make it possible for . . . local governments" to increase voter registration and participation. 52 U.S.C. § 20501(a) & (b). In fact, Congress made it "the duty of the Federal, State, and *local governments* to promote the exercise of that right". *Id.*, § 20501(a)(2) (emphasis added). Paxton's current campaign to use state governmental power to attempt to prevent local governments from engaging in their duty to facilitate voter registration illustrates Congress's wisdom in enacting the NVRA.

4. Underscoring the seriousness of Congress's purpose in seeking to facilitate voter registration efforts by state and local governments, Congress made it a felony to "knowingly and willfully intimidate[], threaten[], or coerce[] . . . any person for . . . aiding any person to register to vote, to vote, or to attempt to register to vote." 52 U.S.C. § 20511(1). In other words, it is a federal crime to intimidate, threaten, or coerce local government officials—like Plaintiffs—with the goal

of preventing them from aiding people to register to vote or attempt to register to vote. Those guilty of such crimes "shall be fined . . . or imprisoned not more than 5 years, or both." *Id.*

5. Paxton's use of state authority to attempt to prevent Plaintiffs from aiding Travis County citizens to register to vote violates federal law and Plaintiffs are entitled to equitable, declaratory, and injunctive relief to stop his efforts and compel compliance with federal law.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 USC §§ 1331, 1343(a)(3), 1357, 1441 and 1446, 52 USC § 1983, and 52 U.S.C. § 20501 *et seq*.

7. Plaintiffs' action for equitable, declaratory, and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure and common law equitable powers of federal courts. Jurisdiction for Plaintiffs' claim for costs and attorneys' fees is based upon Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and 52 U.S.C. § 20510(c).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims in this case occurred in the Western District of Texas and Defendants reside in this district.

## PARTIES

9. Plaintiffs are elected officials of Travis County, including the County Judge, all members of the Travis County Commissioners Court, and the Travis County Tax Assessor-Collector and Voter Registrar.

10. Plaintiffs are the target of Defendant Paxton's campaign to use state court lawsuits, threats, and intimidation in an attempt to prevent them from fulfilling their obligations under the NVRA to aid in the registration of voters and to interfere with the effectiveness of Plaintiffs' efforts.

11. As such, Plaintiffs have standing to bring this action to redress injuries suffered through this deprivation, under color of state law, of rights and obligations secured by the Constitution and the NVRA, 52 U.S.C. § 20501, *et seq.*, as well as standing to seek equitable relief from the Court to compel Defendant Paxton to cease actions preempted by federal law, and to bring this action directly under the NVRA, 52 U.S.C. § 20510.

12. Plaintiff ANDY BROWN is the elected County Judge of Travis County, and in that capacity is a member of the Travis County Commissioners Court. He sues in his official capacity.

13. Plaintiff BRUCE ELFANT is the elected Travis County Tax Assessor-Collector and Voter Registrar. He sues in his official capacity.

14. Plaintiff JEFF TRAVILLION is an elected Travis County Commissioner. He sues in his official capacity.

15. Plaintiff BRIGID SHEA is an elected Travis County Commissioner. She sues in her official capacity.

16. Plaintiff ANN HOWARD is an elected Travis County Commissioner. She sues in her official capacity.

17. Plaintiff MARGARET GÓMEZ is an elected Travis County Commissioner. She sues in her official capacity.

18. Defendant KEN PAXTON is sued in his official capacity as Attorney General of the State of Texas. Attorney General Paxton is taking action under color of state law to sue, intimidate, threaten, and harass Plaintiffs in an effort to stop them from carrying out their obligations under federal law to aid citizens in registering to vote.

19. Defendant JANE NELSON is sued in her official capacity as Secretary of State of Texas. Under Texas law, Secretary Nelson is the chief election official of the state. *See* Tex. Elec.

Code § 31.001. As such, Secretary Nelson is the chief state officer responsible for coordinating state responsibilities under the NVRA. *See* 52 U.S.C. § 20509.

## FACTS

*The NVRA and Texas's Laws, Rules, and Policies to Implement NVRA Obligations*

20. In 1993, Congress enacted the NVRA to combat low voter registration and participation rates and to help address a long history of discriminatory practices in voting systems and laws. Congress specifically found that "the right of citizens of the United States to vote is a fundamental right," that "it is the *duty* of the Federal, State, and *local governments* to promote the exercise of that right," and "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 25 U.S.C. § 20501(a)(1)-(3) (emphasis added).

21. The NVRA was adopted pursuant to the Elections Clause of the U.S. Constitution which imposes on States the duty to prescribe the time, place, and manner of electing Representatives and Senators, but it confers on Congress the power to alter those regulations or supplant them altogether. *See* U.S. CONST. art. 1, §, cl. 1; *see also, Arizona v. Inter Tribal Council of Arizona, Inc.,* 570 U.S. 1, 1-2 (2013) (hereinafter *ITCA*) citing *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 804–805 (1995).

22. The Supreme Court has held that "Times, Places, and Manner,'… are 'comprehensive words,' which 'embrace authority to provide a complete code for congressional elections,' including, … regulations relating to 'registration.'" *ITCA,* 514 U.S. at 12 *citing Smiley v. Holm*, 285 U.S. 355, 366 (1932).

23. "In practice, the [Elections] Clause functions as 'a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to pre-empt state legislative choices.'" *ITCA,* 514 U.S. at 12 *quoting Foster v. Love*, 522 U.S. 67, 69 (1997).

24. Congress chose to pre-empt state law with respect to the process and procedure to register citizens to vote for federal offices through laws such as the NVRA and the Help America Vote Act of 2002, 52 U.S.C. § 20901, *et seq*.

25. "Because the power the Elections Clause confers is none other than the power to pre-empt, the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent." *ITCA,* 514 U.S. at 14.

26. "The assumption that Congress is reluctant to pre-empt does not hold when Congress acts under [the Elections Clause], which empowers Congress to 'make or alter' state election regulations." *Id.*

27. Among Congress's stated purposes in enacting the NVRA were to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," to "make it possible for . . . local governments to implement [the NVRA] in a manner that enhances the participation of eligible citizens as voters in elections for Federal office," and to "protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(1)-(3).

28. The NVRA requires states to "designate a State officer . . . as the chief State election official to be responsible for coordination of State responsibilities under" the NVRA. 52 U.S.C. § 20509. Texas law designates the Secretary of State as that official. *See* Tex. Elec. Code § 31.001. As such, Secretary Nelson has "enforcement authority" to require state actors to "comply with . . . the Act." *Scott v. Schedler*, 771 F.3d 831, 833 (5th Cir. 2014). In turn, Texas law empowers the

Secretary to "take appropriate action to protect the voting rights of the citizens of this state from abuse" and can issue orders, directives, or file suit to further that obligation. Tex. Elec. Code § 31.005.

29. Under the NVRA, the Texas Secretary of State is obligated to make federal and state voter registration forms "available for distribution through governmental and private entities, with particular emphasis on making them available for organized voter registration programs." 52 U.S.C. § 20505(b).

30. The NVRA requires states to designate voter registration agencies, including state offices that provide public assistance, services to persons with disabilities, and other offices—including, *inter alia*, "State or local government offices such as public libraries, public schools, [and] offices of city and county clerks . . . ." 52 U.S.C. § 20506(a)(1)-(3).

31. Voter registration agencies are required to "[d]istribut[e] mail voter registration application forms." *Id.* § 20506(a)(4)(A)(i).

32. The Texas Election Code specifies certain State and local agencies as voter registration agencies and authorizes the Secretary of State to designate others. Tex. Elec. Code § 20.001.

33. Among the other agencies the Secretary has designated are county voter registrars. *See* Tex. Sec'y of State, *Implementing the National Voter Registration Act (NVRA): State Agencies* at 6, https://www.sos.state.tx.us/elections/forms/implementing-the-nvra-state-agencies.pdf.

34. Plaintiff Elfant is the voter registrar for Travis County and thus leads a state-designated voter registration agency.

35. The Secretary advises that the goal of designated voter registration agencies should be to increase voter participation.

36. Below is screenshot from the Secretary's training module for designated voter registration agencies:



*Id.* at 8.

37. The Secretary advises that voter registration agencies should "[d]istribut[e] [] voter registration applications and informational notices . . . as part of the routine distribution of agency related forms and services in the following ways: [1] on-site or off-site direction interactions; [2] *by mail*; or [3] by electronic transmission such as email." *Id.* at 11 (emphasis added).

38. The Secretary further advises that "[a]gencies are responsible for the printing of applications based on agency need and distribution demand." *Id.* at 15.

39. Texas law requires the Secretary of State to specify activities that county voter registrars conduct that "implement[] [] the National Voter Registration Act of 1993." Tex. Elec. Code § 19.004(a)(1)(A) & (b).

40. Pursuant to that requirement, the Secretary of State has promulgated rules titled "Voter Registration Drives Encouraged." Tex. Admin. Code § 81.25.

41. The rule provides that "[v]oter registration drive efforts include but are not limited to *mailout of applications to households*, insertion of applications into newspapers, distributing applications at public locations, and other forms of advertising." *Id.* § 81.25(b); *see also* Tex. Elec. Code § 20.009 (requiring Secretary of State to prescribe "any additional procedures necessary for the orderly and proper administration of voter registration procedures").

42. Texas law allows county voter registrars to apply for state funds to offset the cost of these types of voter registration activities that state law and the Secretary of State have deemed "relate[] to . . . implement[ing] [] the National Voter Registration Act of 1993," Tex. Elec. Code § 19.004(a)(1)(A) & (b); *see also* Tex. Admin. Code § 81.25(a), but Texas law provides that county commissioners courts cannot rely upon receipt of funds from the state for the county's efforts aimed at complying with its NVRA obligations, and so must budget for those activities itself using county funds. *See* Tex. Elec. Code § 19.006 ("The commissioners court may not consider the availability of state funds under this chapter in adopting the county budget for the office of the voter registrar."); *see id.* § 1.014 (providing that political subdivision must cover election-related expenses except as otherwise provided by law).

***Travis County Commissioners Court Contracts to Run Voter Registration Drive Pursuant to its NVRA Duties***

43. On July 19, 2024, Travis County issued a bid for voter outreach services.

44. The scope of work was to "match [the county's] existing registered voter database against [the provider's] database of eligible, Travis County-residing citizens" to facilitate the county's "voter registration outreach" efforts—efforts that the NVRA makes its duty under federal law. *See* 52 U.S.C. § 20501.

9

45. There was one bidder.

46. On August 20, 2024, Plaintiff Elfant—the county voter registrar—recommended to the procurement office that the company be awarded the bid. The matter was placed on the August 27, 2024 Travis County Commissioners Court public meeting agenda, and was approved.

47. The project provides the county the information it needs to fulfill its "duty" as a "local government" under the NVRA—facilitating voter registration to "enhance[] the participation of eligible citizens as voters in elections for Federal office" while also "protect[ing] the integrity of the election process." 52 U.S.C. § 20501(a)(2) & (b)(2) & (3); *see also id.* § 20505(b) (requiring governmental entities to distribute voter registration forms through organized voter registration programs).

48. Travis County's bid required the contractor to follow all applicable federal laws. The NVRA prohibits voter registration agencies from seeking to influence applicants' political preference or party registration. *See* 52 U.S.C. § 20506(a)(4)(A).

49. The contract's statement of work was to identify likely eligible, unregistered voters to further Travis County's NVRA obligation to facilitate and increase voter registration—not to target voters of any particular political party.

***Attorney General Paxton Sues Plaintiffs for Seeking to Carry out their NVRA Duties to Facilitate Voter Registration and Participation.***

50. On September 5, 2024, Attorney General Paxton filed suit against Plaintiffs in Texas state court, alleging that Plaintiffs lacked any authority under state law to identify Travis County citizens who were not registered to vote and to mail them voter registration forms. *State of Texas v. Elfant, et al.*, No. D-1-GN-24-005846 (200th Judicial District, Travis County) (Sept. 5, 2024). Because the state lawsuit presents claims that arise under and require the interpretation of federal laws, the defendants therein, on this same date, filed a notice of removal of that proceeding

10

to place it in this court, thereby protecting this Court's jurisdiction to determine the legal responsibilities of the parties as prescribed in the federal laws. More recently, this Court entered an order remanding the referenced lawsuit to state court, for reasons unrelated to the merits of Plaintiffs' claims concerning Defendants' violations of the NVRA.

51. In the remanded lawsuit, Paxton alleges that Plaintiffs "lack the authority to contract with a vendor to identify and target potentially unregistered individuals" to make voter registration forms available to them.

52. In the suit, Paxton seeks a temporary restraining order, a temporary injunction, and a permanent injunction to block Plaintiffs from carrying out their duties under the NVRA (and state law) to encourage voter participation and facilitate voter registration among eligible voters not yet registered to vote.

53. On the day he initially filed suit, Paxton issued a press release trumpeting his lawsuit, titled "Attorney General Ken Paxton Sues Travis County Over Illegal Use of Taxpayer Funds to Hire Partisan Organization to Identify Potentially Unregistered Voters."[1]

54. The press release labels Travis County's contract to facilitate voter registration an "unlawful appropriation of taxpayer money" and accused Plaintiffs of "blatantly violat[ing]" the law "to conduct unlawful identification efforts to track down people who are not registered to vote." *Id.* Further, he claimed that "[p]rograms like this invite fraud and reduce public trust in our elections. We will stop them and any other county considering such programs." *Id.*

---

[1] *See* Attorney General Ken Paxton, Press Release (Travis County), https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-sues-travis-county-over-illegal-use-taxpayer-funds-hire-partisan.

55. The press release promoted Paxton's similar lawsuit previously filed against Bexar County and his letter warning Harris County not to engage in efforts to facilitate voter registration. *Id.*

56. In that press release, Paxton claimed that "[t]he distribution of forms to unverified recipients could induce ineligible people—such as felons and noncitizens—to commit a crime by attempting to register to vote. Further, Texas counties have no statutory authority to print and mail state registration forms, making the proposal fundamentally illegal."[2]

57. Paxton's statements regarding the eligibility of "felons" to vote are misleading; people with prior felony convictions become eligible to vote once they have "fully discharged" their sentence. Tex. Elec. Code § 11.005(a)(4)(A).

58. On September 2, 2024, Paxton targeted Harris County's plans to facilitate its duties under the NVRA to expand voter registration, sending a letter warning the county that "mail[ing] unsolicited voter registration applications to an untold number of Harris County residents . . . is illegal, and if you move forward with this proposal, I will use all available legal means to stop you."[3] In it, he asserted that people "finally convicted of a felony" are ineligible to vote. *Id.*

59. On September 13, 2024, Paxton released an "Advisory" highlighting his suits against Plaintiffs and Bexar County to "stop their illegal funding of mass voter-registration

---

[2] *See* Attorney General Ken Paxton, Press Release (Bexar County), https://texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-sues-bexar-county-over-unlawful-decision-send-voter-registration

[3] Letter from Attorney General Ken Paxton to Harris County, https://www.texasattorneygeneral.gov/sites/default/files/images/press/Harris%20County%20Voter%20Registration%20Program%20Letter.pdf.

application mail-outs," warning that "I will pursue litigation against any Texas county that does the same."[4]

60. The Advisory encourages citizens who receive voter registration applications in the mail from local governments or nonprofits to "report it to the Attorney General at illegalvoting@oag.texas.gov." *Id.*

61. The accompanying press release warns again that "being a felon" and registering to vote "is a crime"—notwithstanding Texas law that expressly restores voting rights to those with prior felony convictions who have fully discharged their sentences.

62. As noted above, Paxton continues his state court litigation and campaign to stop Plaintiffs from fulfilling their federal law duties under the NVRA to this day and is engaged in an ongoing course of conduct in violation of federal law.

63. On September 17, 2024, Plaintiffs sent a notice of NVRA violations to Defendants, and it has been more than 20 days from the transmittal of that letter to the filing of this First Amended Complaint. Moreover, with the next federal election one week away (November 5, 2024), Defendants' ongoing NVRA violations are occurring within 30 days of a federal election, during which time no pre-suit notice is required.

---

[4] Attorney General Ken Paxton, *Election Advisory: Unsolicited Voter Registration Applications*, https://www.texasattorneygeneral.gov/sites/default/files/images/press/Advisory%20on%20Mass %20Mailings%20of%20Voter%20Registration%20Applications%20FINAL.pdf.

## CAUSES OF ACTION

### COUNT 1

*Equitable Action for Relief from State Action Preempted by the National Voter Registration Act, 52 U.S.C. § 20501, et seq. (against Defendant Paxton)*

64. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

65. The Supreme Court has "long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015); *Ex parte Young*, 209 U.S. 123, 155-56 (1908).

66. The Supreme Court has "long held that federal courts in some circumstances [may] grant injunctive relief against officers who are violating, or planning to violate, federal law." *Armstrong*, 575 U.S. at 326.

67. Defendant Paxton, has taken repeated actions, exercising his authority as a state officer and claiming to act on behalf of the State, to prevent Plaintiffs from carrying out their federal law "duty" under the NVRA as the "local government" of Travis County to "increase the number of eligible citizens who register to vote in elections for Federal office," 52 U.S.C. § 20501(a)(2) & (b)(1), and to "distribut[e]" federal and state registration forms "with particular emphasis on making them available for organized voter registration programs," 52 U.S.C § 20505(b).

68. Paxton has taken legal action against Plaintiffs claiming that *state law* precludes them from fulfilling that which *federal law* expressly makes their "duty." This lawsuit is still pending.

69. Defendant Paxton has issued an advisory claiming that Plaintiffs' efforts to register voters in compliance with the NVRA are "illegal" and asked citizens to file reports with "illegalvoting@oag.texas.gov" if they receive voter registration applications in the mail from Plaintiffs.

70. Defendant Paxton seeks to frustrate the effectiveness of Plaintiffs' efforts to increase voter participation and registration pursuant to their obligations and authority under the NVRA, by seeking to make eligible voters fear registration and by misleadingly causing those with prior felony convictions but who have fully discharged their sentences to believe they are ineligible to vote.

71. All of these actions by Defendant Paxton, taken under color of state law, are unlawful state action preempted by the NVRA.

72. To the extent Texas law purports to preclude Plaintiffs from identifying eligible, unregistered voters and mailing them voter registration applications, Texas law is preempted by federal law.

73. Defendant Paxton's actions violate federal law.

74. Plaintiffs are entitled to equitable relief enjoining Defendant Paxton from taking any actions that are preempted by the NVRA, including any actions to prevent Plaintiffs from exercising their duty under the NVRA to increase voter participation by identifying unregistered potential voters and disseminating to them voter registration forms.

75. Plaintiffs are likewise entitled to declaratory relief that the same is lawful conduct pursuant to the NVRA.

**COUNT 2**

*National Voter Registration Act, 52 U.S.C. § 20501, et sq. (against Defendant Nelson)*

76. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

77. Secretary Nelson has a duty under the NVRA as the chief election official of Texas to exercise her "enforcement authority" to require state actors to "comply with . . . the Act." *Scott*, 771 F.3d at 833.

78. Secretary Nelson has taken no steps to cause Attorney General Paxton to comply with the NVRA and cease his unlawful course of conduct that aims to prevent Plaintiffs from fulfilling their obligations under the NVRA, to prevent the effectiveness of Plaintiffs' efforts to fulfill their NVRA obligations, and to encourage false complaints of "illegal" conduct to be reported to the Attorney General from the receipt of registration applications.

79. Secretary Nelson is obligated under the NVRA to facilitate local governments' efforts to implement the NVRA's requirements and her office has itself determined that one mechanism of implementing the NVRA by voter registrars, such as Plaintiff Elfant, is the "*mailout of applications to households*," Tex. Reg. Code § 81.25(b) (emphasis added), the very activity Defendant Paxton is unlawfully using the power of state action to attempt to prevent Plaintiffs from undertaking.

80. Plaintiffs sent notice of these NVRA violations to Defendant Nelson by letter dated September 17, 2024. *See* 52 U.S.C. § 20510(b).

81. The 20-day pre-suit notice requirement that would otherwise apply is not applicable to the filing of Plaintiffs' original complaint because the purpose of the notice requirement is to allow the State to voluntarily come into compliance without litigation.

82. Here, by his unlawful actions, Defendant Paxton has already brought litigation on the State's behalf in a manner that violates federal law.

83. Notice was futile under those circumstances.

84. In addition, the provision of § 20510(b) that eliminates the notice requirement where the violation occurs 30 days before the date of the election for Federal office may be interpreted as being 30 days from the relevant legal deadline for the federal election to which the violation applies.

85. Here, the violation is unlawful interference with Plaintiffs' voter registration activities, and the deadline for voters to register to vote was less than 30 days from the initial filing of this action.

86. In any event, Plaintiffs provided notice more than 20 days before the filing of this First Amended Complaint, which also alleges ongoing NVRA violations within 30 days of a federal election, and thus no pre-suit notice is required by the NVRA.

87. Plaintiffs are entitled to declaratory and injunctive relief to cause Defendant Nelson to enforce the NVRA against Defendant Paxton and any other state official working in concert with him or otherwise interfering with Plaintiffs' fulfillment of their NVRA duties and responsibilities.

## REQUESTED RELIEF

Plaintiffs request that the Court:

a)   Issue a declaratory judgment that Plaintiffs' voter registration activities described herein are their duty and responsibility under the NVRA and that Paxton's efforts to interfere with those actions are unlawful state action preempted by the NVRA;

b)   Issue declaratory judgment that to the extent Texas state law purports to preclude Plaintiffs' voter registration activities described herein, that law is preempted by the NVRA;

c) Issue a declaratory judgment that Defendant Nelson's failure to enforce the NVRA and take steps to cause Defendant Paxton, and any other state officials working in concert with him, violates her responsibilities under the NVRA;

d) Grant equitable relief, including by preliminarily and permanently enjoining Defendant Paxton from taking any steps seeking to prevent Plaintiffs from fulfilling their duties and responsibilities under the NVRA to register voters, including but not limited to the voter registration activities described herein;

e) Grant a preliminary and permanent injunction requiring Defendant Nelson to take steps to enforce the NVRA and to cause Defendant Paxton, and any state official working in concert with him, to cease taking actions aimed at interfering with Plaintiffs' efforts to register voters in furtherance of their NVRA duties and responsibilities.

f) Award Plaintiffs their costs and reasonable attorneys' fees pursuant to Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and 52 U.S.C. § 10310(e);

g) Retain jurisdiction and render any further orders that the Court may; and

h) Grant any and all further relief to which Plaintiffs may show themselves to be entitled.

Dated: October 29, 2024

Respectfully submitted,

DELIA GARZA
State Bar No. 24076399
TRAVIS COUNTY ATTORNEY
P. O. Box 1748
Austin, Texas 78767
Telephone: (512) 854-9415
Facsimile: (512) 854-4808

Leslie W. Dippel
State Bar No. 00796472
Leslie.Dippel@traviscountytx.gov
Amy S. Ybarra

        State Bar No. 24013573
Amy.Ybarra@traviscountytx.gov
Cynthia W. Veidt
State Bar No. 24028092
Cynthia.Veidt@traviscountytx.gov
Assistant Travis County Attorneys

BRAZIL & DUNN

 /s/ *Chad W. Dunn*
Chad W. Dunn
Texas Bar No. 24036507
1900 Pearl Street
Austin, Texas 78705
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

K. Scott Brazil
State Bar No. 02934050
13231 Champion Forest Drive, Suite 406
Houston, Texas 77069
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
scott@brazilanddunn.com

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

      I hereby certify that on October 29, 2024, I electronically filed the foregoing document with the Clerk of the United States District Court for the Western District of Texas, Austin Division, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

      By: /s/ *Chad W. Dunn*
          Chad W. Dunn